## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chris Frost
Plaintiff

vs.

American Credit Financial, LLC, Accelerated Solutions Group LLC, Rob Munroe, Legal Portfolio Asset Management LLC, Multisource International, LLC and Diverse Funding Associates LLC
Defendants

**COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF, as and for his causes of against the above-named defendants, states and alleges as follows:

### Introduction

1.      The following case alleges ongoing telephone harassment and intimidation regarding an out-of-statute, improperly calculated debt originated with Guarantee Bank. For the last year Mr. Frost and his family has been harassed by unlicensed debt collectors who have threatened to garnish Mr. Frost's bank accounts, threatened to have Mr. Frost arrested, and threatened to physically assault Mr. Frost at his home. Consequently, Plaintiff brings the instant action.

### Statement of Jurisdiction

2.       This Court has Jurisdiction over the subject matter of this action pursuant to 27

U.S.C. §1331 and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§1692k(d). This Court has subject-matter jurisdiction over plaintiffs' state-law claims

under 28 U.S.C. § 1367(a).

### Venue

3.       Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

4.       The alleged debt at issue in this matter was incurred by Plaintiff, a Minnesota

resident, while physically located in the State of Minnesota.

### Parties

5.       Plaintiff Chris Frost is an adult resident of Ramsey County, Minnesota.

6.       Defendant American Credit Financial, LLC (hereinafter "American Credit") is a

limited liability company located in Norcross, Georgia and a "debt collector" as defined

by 15 U.S.C.§1692a(6). American Credit is not registered to conduct business or collect

debts in the State of Minnesota.

7.       Defendant Accelerated Solutions Group LLC (hereinafter "Accelerated

Solutions") is a limited liability company located in Alpharetta Georgia and a "debt

collector" as defined by 15 U.S.C. §1692a(6). Accelerated Solutions is not registered to

do business or collect debts in the State of Minnesota.

8.       Defendant Mr. Rob Munroe is an adult resident of Georgia and is, on information

and belief, an officer, director, or owner of Accelerated Solutions and a "debt collector"

as defined by 15 U.S.C. §1692a(6). Mr. Munroe is not registered to collect debts in the State of Minnesota.

9.      Legal Portfolio Asset Management LLC (hereinafter "Legal Portfolio") is a limited liability company located in Dawsonville, Georgia and a "debt collector" as defined by 15 U.S.C. §1692a(6). Legal Portfolio is not registered to do business or collect debts in the State of Minnesota.

10.     Diverse Funding Associates LLC (hereinafter "Diverse Funding") is a limited liability company located in Cheektowaga, New York and a "debt collector" as defined by 15 U.S.C. §1692a(6). Diverse Funding is not registered to do business or collect debts in the State of Minnesota.

11.     Multisource International LLC (hereinafter "Multisource") is a limited liability company located in Cheektowaga, New York and a "debt collector" as defined by 15 U.S.C. §1692a(6). Multisource is not registered to do business or collect debts in the State of Minnesota.

**Facts**

12.     More than five years ago Plaintiff was approached by an agent of Guaranty Bank when he was working in a factory.

13.     The agent solicited Plaintiff to open a new bank account in Guaranty Bank, which the agent assured Plaintiff was free of any fees.

14.     The bank's agent stated that Plaintiff would not be charged any fees for the account services and Plaintiff could close the account at any time.

15.     Plaintiff initially refused the agent's offer.

16.     The agent then spoke with Plaintiff's supervisor, who later asked Plaintiff to open a bank account with Guaranty Bank so that so that the company could directly deposit Plaintiff's pay check.

17.      Plaintiff did as his supervisor requested and opened an account with Guaranty Bank.

18.     After several months, Plaintiff noticed Guaranty Bank debiting fees from his account, despite previous assurances to the contrary; Plaintiff promptly closed his account.

19.     Sometime thereafter, Plaintiff received a letter from Guaranty Bank stating that he had a balance due and owing on the account.

20.     The alleged balance at the time was less than $100.00.

21.      On information and belief, said balance consisted entirely of unauthorized fees.

22.     Guaranty Bank then made minimal attempts to collect the alleged debt by placing a handful of calls over a nearly five-year period.

23.     Upon information and belief, Guaranty Bank sold, transferred, or otherwise assigned the debt to Defendant Diverse Funding.

24.     In September of 2015, Plaintiff began receiving collection phone calls from a company allegedly called Defendant Multisource under the instruction of Defendant Diverse Funding.

25.     On information and belief, Defendant Diverse Funding also made repeated calls to Mr. Frost's personal cell phone in an attempt to collect the debt in question.

26.     On several occasions, Mr. Frost asked Diverse Funding and Multisource to cease calling his phone regarding the disputed debt.

27.     Diverse Funding and Multisource continued calling despite Plaintiff's protests.

28.     On several occasions, Diverse Funding and Multisource are believed to have utilized automated telephone dialing equipment (ATDS) in an effort to reach Mr. Frost.

29.     On several occasions upon answering a call from these companies Mr. Frost was greeted by an automated or prerecorded voice.

30.     On other occasions upon answering a call from the numbers Mr. Frost previously identified as belonging to Defendants Diverse Funding and Multisource, Mr. Frost encountered a period of dead air in which no person greeted him and Mr. Frost eventually disconnected the call in question.

31.     On one occasion in which Mr. Frost spoke with Defendant Diverse Funding and the collector indicated that Mr. Frost owed balance in excess of $944.00.

32.     During said occasion, Mr. Frost indicated to the collector that there was no way the alleged balance due could be anywhere close to $944.00.

33.     Additionally, the collector in question indicated that it was initiating a lawsuit against Mr. Frost and that Mr. Frost's wages would soon be garnished.

34.     On information and belief, Diverse Funding had no intention or authority to sue Mr. Frost.

35.     During said call Defendant Diverse Funding did indicate it would verify the balance of the debt in question.

36.     Mr. Frost received no such verification.

37.     Additionally, Defendant Diverse Funding failed to provide Mr. Frost notice of his rights under 15 U.S.C. §1692g of the FDCPA.

38.     On information and belief Defendant Diverse Funding failed to provide Mr. Frost with the other disclosures regarding his rights as required under the Fair Debt Collections Practices Act.

39.     After Mr. Frost's inquiry regarding the balance of the alleged debt, the debt in question was subsequently shuffled among the Defendants in this action by way of sale, transfer, or other assignment.

40.     The exact path of the debt in question is unclear as the Defendants have offered to Plaintiff conflicting and contradictory statements regarding periods of ownership or servicing.

41.     At some point, the debt in question was sold, transferred, or otherwise assigned to Defendant Legal Portfolio who began contacting Plaintiff via telephone regarding the same debt.

42.     In speaking with Mr. Frost, Legal Portfolio threatened suit against Mr. Frost regarding the debt in question, when in fact, Legal Portfolio had no intention or authority to sue Mr. Frost.

43.     Mr. Frost verbally informed legal portfolio that he disputed the amount of the debt and Mr. Frost requested that Legal Portfolio verify the amount of the debt with Guarantee Bank.

44.     Legal Portfolio similarly indicated it would verify the balance of the debt in question.

45.     On information and belief, Legal Portfolio failed to provide Mr. Frost with the disclosure of his rights as required under the 15 U.S.C. §1692g of the Fair Debt Collections Practices Act.

46.     On information and belief, despite its promise to do so, Legal Portfolio failed to verify the debt in question with Guarantee Bank.

47.     On information and belief Defendant Legal Portfolio used an ATDS to contact Plaintiff on his personal cell phone.

48.     Several of the phone calls Plaintiff received from Defendant Legal Portfolio's calls were accompanied by long delays before a representative was available.

49.     At some point the debt in question was sold, transferred, or otherwise assigned to Defendant Accelerated Solutions who began contact Plaintiff via telephone regarding the same debt.

50.     On information and belief, Accelerated Solutions similarly failed to provide Mr. Frost with the disclosures required under the 15 U.S.C. §1692g Fair Debt Collections Practices Act.

51.     Accelerated Solutions similarly threatened suit against Mr. Frost, when in fact, Accelerated Solutions had no intention or authority to sue Mr. Frost.

52.     Mr. Frost once again verbally informed Accelerated Solutions that he disputed the amount of the debt and Mr. Frost requested that Accelerated Solutions verify the amount of the debt with Guarantee Bank.

53.     Accelerated Solutions similarly indicated it would verify the balance of the debt in question.

54.     On information and belief, at the time Mr. Frost requested verification, Mr. Frost was speaking with Mr. Rob Munroe who is an owner, director, or officer of Accelerated Solutions.

55.     On information and belief, no such verification took place.

56.     On information and belief Mr. Munroe never intended to verify the debt in question, but instead intended to again sell, transfer or otherwise assign the debt to another party.

57.     In May of 2016, Plaintiff began receiving calls from Defendant American Credit.

58.     Collectors with American Credit began contacting Plaintiff multiple times per day with continuous and repeated phone calls.

59.     When asked to stop calling, American Credit stated they would not and that American Credit was "working with authorities" regarding Mr. Frost's alleged "theft of services."

60.     One representative of American Credit stated that the company had filed a case against Mr. Frost and provided a case number that was inconsistent with the case numbering system used by both the state and federal courts in Minnesota.

61.     After contacting his attorney, Mr. Frost informed American Credit that he knew that American Credit had not filed a case against him and again asked the company to cease its harassing calls.

62.     Mr. Frost notified American Credit that Mr. Frost was represented by any attorney with regard to this debt and provided American Credit with his attorney's contact information.

63.     Nonetheless, the calls to Mr. Frost continued.

64.     During one call, Mr. Frost was told to "watch his back" in a manner suggesting a representative of American Credit intended to cause Mr. Frost physical harm.

65.     In another call a representative of American Credit told Mr. Frost that American Credit would have someone "stop by his house".

66.     In another call a representative of American Credit told Mr. Frost that American credit would remove property from Mr. Frost's home while he was at work.

67.     In another call a representative of American Credit told Mr. Frost that the police were searching for him.

68.     In another call a representative of American Credit told Mr. Frost that a representative from American Credit would be waiting for Mr. Frost when Mr. Frost returned home from work.

69.     On several occasions Mr. Frost was called an array of profanity laden names.

70.     Mr. Frost made attempts to block the calls in question, however, the American Credit varied its calling using different numbers.

71.     On many occasions American Credit called Mr. Frost before 8:00 a.m. and after 9:00 p.m.

72.     At no time did American Credit provide any disclosure of Mr. Frost's rights as required by the 15 U.S.C. §1692g of the Fair Debt Collections Practices Act.

73.     In August of 2016, after months of harassment, Plaintiff contacted Mr. Rob Munroe at Accelerated Solutions in an effort to determine who was then calling his telephone regarding the debt in question.

74.     In this call Mr. Rob Munroe stated that he was "just a middleman" and that he did not own or service the debt in question.

75.     Mr. Frost stated that he had previously spoken with Mr. Munroe and therefore Mr. Frost knew Mr. Munroe was also engaged in the collection of this debt.

76.     Mr. Munroe acknowledged he does actively collect debts but that he had resold the debt in question to Defendant Legal Portfolio.

77.     Mr. Frost stated that he had previously contacted Legal Portfolio who stated that Mr. Munroe in fact still owed the debt in question.

78.     Mr. Munroe thereafter paused for several seconds and then stated that he had sold the alleged debt to Cedar Investment Solutions, LLC.

79.     On information and belief Cedar Investment Solutions, LLC is the current owner of the debt in question.

80.     39.     No Defendant in this matter is registered to collect debts in the State of Minnesota.

81.     By failing to register as a collection agency with the Minnesota Department of Commerce, all Defendants are and have been at all times relevant in violation of Minn. Stat. §332.33 sub. 1.

82.     By collecting debts without a license, all Defendants took action or threatened to take action that could not legally be taken in violation of 15 U.S.C. §1692e(5).

83.     Mr. Frost was harmed by Defendants calls in that Mr. Frost was forced to interrupt his work in order to answer the unwanted calls, and in that the calls in question physically

stressed Mr. Frost by and through feelings of hopelessness, anger, anxiety and general

frustration.

84.     On several occasions Mr. Frost became so frustrated and hopeless that Mr. Frost

was forced to leave his work in order to clam himself.

85.     On other occasions, Mr. Frost disabled his cellular phone notifications to avoid the

calls in question; in some instances, Mr. Frost missed calls and texts from his family and

friends as a result of his avoidance of calls due to Defendants' calls.

86.     Because of the foregoing, Mr. Frost has suffered emotional distress, including

fear, anxiety, humiliation, and embarrassment.

## Specific Claims

Count I– Violation of Fair Debt Collection 15 U.S.C. § 1692 *et. seq.*

*Against All Defendants in Various Parts*

87.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

88.     The aforementioned conduct includes multiple and numerous violations of the Fair

Debt Collection Practices Act by Defendants including, but not limited to, violations of:

     a.   15 U.S.C. §§ 1692c(1)(with respect to Defendant American Credit),

     b.   1692c(2) (with respect to Defendant American Credit)

     c.   1692d(1)(with respect to Defendant American Credit),

     d.   1692d(2) (with respect to Defendant American Credit),

     e.   1692d(4) (with respect to Defendants Accelerated Solutions and Rob

       Munroe),

f.   1692(5) (with respect to all Defendants),

g.   1692e(1)(with respect to Defendant American Credit),

h.   1692e(2)(A)(with respect to all Defendants),

i.   1692e(4)(with respect to Defendant American Credit),

j.   1692e(5)(with respect to all Defendants),

k.   1692e(7)(with respect to Defendant American Credit),

l.   1692e(10)(with respect to Defendant American Credit),

m.   1692e(11)(with respect to Defendants American Credit, Legal Portfolio, and Accelerated Solutions),

n.   1692e(12)(with respect to Defendants Accelerated Solutions and Rob Monroe),

o.   1692f(1)(with respect to all Defendants),

p.   1692f(6)(with respect to all Defendants),

q.   1692g(a)(with respect to all Defendants).


Count II - Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

*Against Defendants Legal Portfolio Asset Management LLC, Diverse Funding*

*Solutions LLC, and Multisource International, LLC*


89.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

90.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

91.     As a result of Defendants' violations of 47 U.S.C. § 227 et seq, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

92.     Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the future.

Count III – Knowing and/ or Willful Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

*Against Defendants Legal Portfolio Asset Management LLC, Diverse Funding Solutions LLC, and Multisource International, LLC*

93.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

94.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/ or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

95.     As a result of Defendants' knowing and/ or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00 for

each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. §

227(b)(3)(C).


Count IV- Violation of the Minnesota Automatic Dialing-Announcing Devices Act Minn.

Stat. §325E.26-31

*Against Defendants Legal Portfolio Asset Management LLC, Diverse Funding*

*Solutions LLC, and Multisource International, LLC*

96.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

97.     The foregoing acts and omissions of Defendants constitute numerous and multiple

violations of the Minn. Stat. §325E.27.

98.     Pursuant to Minn. Stat. §325E.31, Defendants are subject to a private right of

action under Minn. Stat. §8.31, and is subject to remedies including damages, reasonable

costs and disbursements, reasonable attorney's fees, and injunctive relief.


Count V – Common Law Invasion of Privacy by Intrusion Upon Seclusion

*Against All Defendants*


99.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

100.    The foregoing calls placed by Defendants constitute an intentional intrusion upon

the seclusion of Plaintiff.

14

101.    Plaintiff had a reasonable expectation of privacy in that he reasonably did not expect to be repeatedly called on his telephone line.

102.    Plaintiff had a reasonable expectation of privacy and expectation that persons calling his phone line are not intending to harass him.

103.    The volume and nature of said phone calls were highly offensive to Plaintiff and would be similarly offensive to any reasonable Minnesota consumer.

104.    As a result of Defendants' invasion upon the seclusion of Plaintiff, Plaintiff is entitled to damages including such fair compensation as a court or jury may deem appropriate.


Count VI – Intentional Infliction of Emotional Distress

*Against Defendant American Credit Financial, LLC*


105.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106.    These aforementioned acts and omissions by Defendant constitute willful outrageous conduct intended to cause severe emotional distress.

107.    Plaintiff has suffered severe emotional distress as a result of Defendant's tortious and illegal actions.

108.    Plaintiff has in the past been, and will in the future will be, forced to incur the expenses of doctors, hospitals, and other related medical expenses in endeavoring to treat and cure herself of said injuries.

## Jury Demand

109.    Plaintiff hereby demands a trial by jury.


## Prayer for Relief

WHEREFORE, Plaintiff, by and through her attorney, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a.      All actual compensatory damages suffered;

b.      Statutory damages;

c.      Injunctive relief prohibiting defendants from placing calls using automated or prerecorded voices when placing calls to Minnesota residents;

d.      Reasonable attorney's fees, litigation expenses, and cost of suit; and

e.      Any other relief deemed appropriate by this Honorable Court.


Dated: October 10, 2016            Respectfully Submitted,

MADGETT & PETERSON, LLC

By:s/Ryan D. Peterson
 Ryan D. Peterson (#0389607)
 David J.S. Madgett (#03900494)
 619 South Tenth Street
 Suite 301
 Minneapolis, MN 55404
 (612) 367-6568
 rpeterson@madgettlaw.com
 dmadgett@madgettlaw.com

ATTORNEYS FOR PLAINTIFF

16